Okay, our third case this morning is number 161748, Tytex International versus Precision Fabrics Group. Mrs. Zelliger, is that how you pronounce it?  May it please the court. Okay. This case addresses what weight the PTAB has to give during an IPR to a decision that its predecessor court, the BPAI, gave during patent prosecution. It's our position that the PTAB, when it is deciding an IPR, it cannot disregard the prior findings that basically the same body made during prosecution. Some level of deference. What's the impact? I mean, it's kind of surprising that you didn't even acknowledge this in your blue brief, but what's the impact of the fact that the appeal was reopened? Well, the fact that the appeal was reopened, the appeal wasn't reopened. What happened is an RCE was filed. So an RCE means that the patent owner is going to explore another option. Right. So the way that the appellate system works at the board level is that if the patent owner, well, if the patentee is not satisfied with the examiner's rejections, it can appeal and it appeals to the board. The board issues a decision. At that point, there are only three options that the patent owner has if it gets an adverse decision. It can ask for reconsideration, it can go to the district court, or it can appeal to this court. So what the patentee did in this case is it did not do any of those three things. Instead, it filed for a RCE, which means I'm going to continue prosecution. And I'm going to continue prosecution does not mean that there is no weight given to that administrative decision by the board. Instead, what you see in the MPEP and what's accepted is that the patent owner would not have been able to make that same argument. The board's decision is a final decision. And because the board's decision is a final decision, that's why TYTAX was relying on it in its appeal. But it's not a collateral estoppel, right? Well, there has been some cases that are trying to determine whether it's a collateral estoppel or whether there's some kind of issue of an administrative estoppel, or whether this is really the... Well, it's not an adversarial proceeding. It seems to me difficult to contend that it's a collateral estoppel. Well, actually, the elements of collateral estoppel are met here. So this was a fair... It's not saying that it has to be an adversarial position. The fifth element of collateral estoppel, instead, is that the decision has to be... That the decision had to have been litigated fully and fairly. Well, I mean, the problem I have with the argument on both sides is there's a whole series of cases, application of Craig and subsequent cases, which deal with this issue, which you don't address in your brief. And I'm not going to get into them now, but it seems to me you've got a very hard argument that it's collateral estoppel. But go ahead. Okay. If it's not collateral estoppel, then the question is, does that mean that the board's final decision on the exact same issue does not have any weight? But the problem is, is they were looking at it under different standards. When you're talking about the board's other proceedings, other than IPRs, what you're talking about are where there are different presumptions and different burdens. And there, there was a presumption as it related to inherency that the board was allowed to rely upon because the examiner's not in a position to basically be putting evidence on. Those presumptions don't apply in IPR proceeding. We address that in par forma. Yes. But when the board makes a final decision in a prosecution case, it is making a decision that is based on a preponderance of the evidence. That's the standard it's supposed to make when it makes an obvious determination. But it's not a final decision. It is a final decision. It was not appealed. It was not. There was no ask of reconsideration, and it was not brought to this court's decision. So at page five of your reply brief, when you say, an RCE withdraws the finality, and you emphasize the finality of prosecution, not the actual decision and reasoning made by the BAI, what exactly do you mean when you say it withdraws the finality? It withdraws that particular issue that was being raised by the examiner and that the board decided. So here, the board made two decisions, too. It did not just rely on the presumption of inherency that the examiner was discussing below. Instead, it said the patent specification teaches fabrics that already have a TPP value greater than 4.5 that are conventional. You're not answering my question. I'm sorry, Judge Wallace. What did you mean when you said it withdraws and emphasized the word finality, and yet you're telling me it's final? The finality of prosecution is different. So let's look at page five. It's final as to this issue, but it's not final as to the prosecution. Exactly. Exactly. So this issue is decided. You can't go down this route anymore. Instead, you have to take a new route, and that's exactly what the patent owner did here. After that final decision that said TPP is obvious, what the patent owner then did is they filed a continuation, and then they prosecuted claims that were narrower, and those claims were to a specific type of nonwoven fabric rather than the general genus of fabric. Why didn't you put on evidence in this proceeding as to the TPP of this particular fabric? That seems to be fairly easy, and you may well be right that there's an obviousness here, but why didn't you put on the evidence? Well, here, there actually was evidence based on the different fabrics that the patent owner put into evidence during prosecution, but the reason that we didn't put that other information in there is because where does it stop? In other words, we have to show that this is a natural consequence throughout the entire scope of the claims. So if we just provide empirical evidence, how can we really honestly prove that negative? The most important part, though, is that we should be able to rely on the prosecution history. This is a public opinion, and that public opinion addressed the same issue here. It's your position repeatedly in the Blue Brief that the decision on appeal is precedential. Is that correct? It's binding, entitled to deference. Yes. I say that repeatedly. Yes. But the PTO has a procedure for making decisions precedential, and this isn't marked that way. It is still a final judgment in that area. I don't understand what your question is. You don't understand what precedential means? No, I understand what precedential means. What I don't understand is why this final decision in this particular case should not apply to the same IPR. I understand what precedential would mean. It would mean that it can apply to everybody. But here we're asking, does it apply in the exact same pattern? But what you're really asking us to do is to take this presumption as it relates to inherency and to import it into the IPR, despite cases that we have decided that say you can't do that. You cannot use a presumption in an IPR proceeding. It's one thing in an examination proceeding because of the respective abilities of the patent applicant. It's quite another to do it in an IPR, and we've said you can't. So I don't know how, I mean, even if it is a final decision, it doesn't matter because it's not the same issue. It's not based on the same predicate. Well, I disagree, and the reason I disagree is because we're not trying to rely on a presumption of inherency here. We are relying on a finding by the board. And the finding is predicated on a presumption of inherency. It's not only predicated on a presumption of inherency. In pages three and four of that decision, it specifically says that conventional fabrics have TPP values over 4.5. So it would be obvious for a person of ordinary... But there was no evidence in the record of that fact except the presumption. No, no, there was evidence. There was evidence of what conventional fabrics have, and that conventional fabrics, as admitted by the patent owner in the specification, have thermal properties that are above 4.5. We're trying to rely on what the board said. The board said TPP is obvious. The examiner relied on the presumption. The board relied both on the presumption and this other evidence that you're talking about. Yes, it made two different rationales for its finding. The other thing to consider about the board's decision was that the examiner explained why it was using that presumption of inherency. It said, and this is a common sense point, the same fabric cannot have different thermal properties. Here... Yeah, but where's the evidence that any fabric had a 4.5 that was within the scope of the original claims? Is that the alternative board finding that you're talking about? I didn't see them saying that the particular fabric within the scope of the claims had a 4.5 or better rating. The particular fabric within the scope of the claims, there was only one submission by the patent owner of a TPP. That was supposed to cover the entire realm of the claims, the entire scope of the claims. What the patent itself discloses is that traditional woven fabrics have a TPP value over 4.5. Just because non-woven, which shouldn't be... That's not non-woven. We're dealing with non-woven. Non-woven is naturally inclined to have a lower TPP value. Where's the evidence of that? It is in the patent specification, let me grab it. So, there is currently a need for a lightweight... Where are you reading from? Oh, I'm so sorry. So, that is appendix page 26, and we're in column 54. 54? 4, you mean. Sorry? Column 4. Column 3. Column 3. 54. Line 54. So, this is discussing the background of the invention, and it notes that there's currently a need for lightweight, low-cost fabrics that provide a high degree of protection from heat. Yeah, but where does it say that conventional fabrics have a 4.5 rating and that non-woven fabrics would have an even higher rating, which is, I thought, what you were saying. No, no, no. The argument is that non-woven fabrics would not have as high of a rating as woven fabrics. Where does it say that? Your Honor, I'll have to find it exactly in the specification when I'm reading, when I'm listening to the appellate argument. You want to save the rest of your time here? Yes, I'll save the rest of my time. Thank you. Ms. Borchers? Good morning. May it please the Court? I'm going to start exactly with the point or question that Judge O'Malley raised, that a presumption cannot be used in an IPR, that this Court has opinions that say that that can't be so. Yeah, but it's true, isn't it, that the Board in the original proceeding alternatively relied on material, I guess, in the specification to show that the 4.5 standard was met? What the BPAI decision, it did, was there were a different set of claims pending at that time? Yeah, I understand, but it didn't exclusively rely on the presumption, right?  At the bottom of page three of that opinion, appendix 2203, the BPAI said the references are silent regarding contact thermal protective performance value for the disclosed heat transfer resistant fabrics, but then said, but the specification discloses that conventional fabrics have a 4.5 and then it says appellants make no argument that the fabrics of either reference have a value of less than 4.5, nor have they made the argument that it would have been not obvious for one of ordinary skill in the art to make a flame retardant intumescent fabric having the claimed value. So, what does that mean? Yes, Your Honor. So, during the IPR, the patent owner, PFG, did argue and presented evidence to the Board that the conventional fabrics that are mentioned in the patent are woven fabrics of a different structure than what was claimed. And the Board, in its decision, recognized and acknowledged that argument that it was made, and on page, appendix page 10 of the PTAB's decision, the Board recognized that the patent owner argued that the suggestion in the appeal decision that prior art fabrics suggested the thermal protective performance of the claims is misplaced because the conventional fabrics described in the 639 patent were woven fabrics with different constructions from the fabrics of the claims of the 639 patent. So, what is the impact of not having made that argument during the prosecution? Or the appeal from the denial? The impact for the claims that issue that were being challenged in the IPR, I believe, is there's no preclusive effect, no estoppel theory, no preclusive theory that renders the Board, the PTAB, having to follow that BPI decision. And that is because the claims that were pending at the time during prosecution of that decision were different claims. They were missing four limitations that ended up in the issue claims. Also, the prior art that was being considered at the time. Well, that may be true, but to the extent that the TPP is a limitation, that was involved then and involved now, right? It was. However, what all of the examiner... And TPP is the only issue here as to non-obviousness, right? Correct. What the examiner and the Board found, as you were just reading, was that if we go back to the BPI's decision, the BPI and the examiner were considering two specific references, the HORSEC reference and the MERCH reference. And it was premised on the examiner and the BPI finding that the structure of the fabric that would result from a combination of those two references would match, would be the same as the structure that was in the claims at that time. And based on that, the BPI and the examiner were saying that it would be reasonable to necessarily follow from that. And what's fundamentally different in the IPR is that that presumption can't apply to the claims that existed during the IPR because those claims were different and with four additional elements that didn't exist at the time of this decision. Elements that would impact the structure of the fabric? Yes, there was a finding by the PTAB that the limitation of TPP is a limitation on what fabrics fall within the scope of the claim. And that there was no evidence put on by the petitioner TYTEX that the structure of the three different references that were being considered in the IPR, Radwanski, Rowan, and MERCH, not these two. But the fabric that's being claimed here was within the scope of the earlier claim, right? There are. The earlier claims did not have the limitations of... No, no, no, but to answer my question, is the fabric that is involved here in this claim is the same as fabric that was within the scope of the earlier claims? That may be, Your Honor. I think I'd actually have to think about that a little bit harder, and I apologize for not being able to give a straight yes or no on that. The limitations that were added later were the percent of add-on or finish that gets put on the fabric, limiting the fabric to just a stitch-bonded fabric as opposed to the wide list of possible non-woven fabrics at the other time, which included things like spun-bonded, needle-punched, etc. And also the content of the flame-retardant, the compounds in the flame-retardant finish, and that the fabric would have polyester fibers in addition to cellulosic. Those are all the limitations that were added. And the reason why they're so important is because when the claims were amended to add all that, that is when the examiner no longer made an inherency rejection. And an inheritance rejection never occurred after that point in time in prosecution, after prosecution was reopened. And the examiner found that those were non-obvious choices because the fabrics of the claims they issued are used as thermal barriers, but stitch-bonding creates holes in the fabric. There's actually literally holes in it that you could see with your naked eye. And the polyester fibers melt and can enlarge those holes. And so the examiner had agreed in subsequent prosecution after this decision that the applicants appeared to have a strong case for non-obviousness because there were unexpected results, that you would not expect the fabric in the claims that ultimately issued to act as a thermal barrier. And it was as a result of those amendments that the inherency rejection never appeared again in the prosecution. So after the BPAI decision, there were actually three more— I would ask that if we buy your argument that you've got a 112 problem. A few things on the 112 argument. So the first is that this is a completely new issue on appeal. It's untimely, and the precedent of this Court is that new issues that weren't presented below should not be considered on appeal. And then second is the fact that non-enablement is not an issue that is raised in IPRs. IPRs are limited to anticipation. Well, I get that. I mean, we can't find enablement in the first instance or lack of enablement. We can't even send it back and say, consider enablement. But as a practical matter, why isn't the fact that you might have an enablement problem if we buy your underlying argument indicative of the fact that maybe your underlying argument isn't as strong as it should be? With due respect, I disagree that there's an enablement issue. The patent is presumed valid and presumed enabled. That issue wasn't presented below, and so there's not a full record there, of course, from PFG, the patent owner's side, to show or to rebut any type of non-enablement argument. We believe that it is enabled, but that is not properly an issue here. And there's not going to be full and complete evidence in the record below in the IPR because that wasn't an issue that was presented in the IPR. Returning to the precedential or non-precedential effect of the BPI decision, TITEX has framed that issue as a legal error that's subject to de novo review, and we disagree with that. We believe that the correct standard should actually be whether the findings, the PTEP's findings, were subject to substantial evidence because that whole determination is based on a factual evaluation. Inherency in this court has opinions that establish that the presumption of inherency is a fact-specific question, and that the PTEP correctly recognized that TITEX, to prevail in the IPR on the inherency issue, was required to establish that the TPP was inherent in the prior art and had to do that with factual evidence, and TITEX chose not to do that. TITEX chose to rely solely on the BPAI decision and not to put in any evidence of what fabric results from the combination of the three prior art references or that the TPP would inherently result from that combination. The board also, the PTEP also, correctly found that the burden should not have shifted to the patent owner to show that the TPP element was not inherent. This court has addressed that issue as well in Magnum Oil and has said that unlike in patent prosecution, where a burden-shifting framework does make sense because the examiner is not in a position to put forward evidence, the burden-shifting makes sense there, but that in the IPR, burden-shifting is not warranted. Talk about your opponent's attempts to distinguish Magnum. Yes, they attempted to distinguish Magnum by saying that it doesn't mention inherent obviousness as opposed to just straight obviousness issues, and Magnum Oil, we submit, should be, applies to both situations. There's no reason to treat it differently for inherent obviousness as compared to obviousness. What they say is that the original BPAI decision did not just rely on the presumption, but alternatively it relied on evidence in the record showing that these fabrics wouldn't meet the TPP limit. The only evidence in the record that they pointed to in their briefing in here today and during oral argument is this argument about the statement in the patent about conventional fabrics. The BPAI the first time around said there's evidence that conventional fabrics have this TPP rating and that it wouldn't be hard for somebody to figure out how to do that with respect to this list of fabrics that were in the claim. And that evidence was rebutted below by PFG by pointing out that the conventional fabrics were woven, not non-woven. There's a vast difference between the two and that this invention is something completely different. It's a single layer of stitch bonded fabric that is very different that wouldn't be expected to be able to have a TPP value of the woven fabrics because it is a single layer as opposed to a laminate or much thicker and it has the holes in it and it would not be expected to act as a thermal barrier. All of that evidence was submitted to the IPR and rebutted at that point. The PTAB found in its decision that fundamentally... Yeah, but they're saying the same issue was in the first proceeding because the fabric that's now within the claims was within the claims that were before the BPAI the first time around. I respectfully disagree with that because the claims were so different than what the issued claims were. The structure is different. And for inherency, the inherency case law says that in order for that presumption to exist there has to be the structure of the fabric from the claims would need to match the structure of the prior art references. The structure that there's no showing of that in the IPR. There's no showing that this combination of references in the IPR would result in the same structures in the claims. In fact, PFG was the only one who put evidence in on that and that's acknowledged in the PTAB's decision that PFG submitted evidence to show that... I thought you said earlier that you didn't know whether the same fabric was within the original claims. Because I had never thought of it in those terms, that's not an issue that was briefed in that way. It's not even an issue that was raised by TYTEX stated that way. And so having thought through it a little bit more as I'm standing here doing the argument I don't agree with that, that it's the same for the reasons that I stated. Okay. All right. Thank you. We're out of time. Thank you. I was mistaken that the position that a non-woven fabric would be expected to have a lower TPP value was in the patent. And instead, the patent itself was originally drawn to all manner of creation of the fabric. As we just heard the appellee admit, though, is that according to their own declarations they thought that a non-woven stitch-bonded fabric like what's claimed here would not have that same TPP value. That it would not be able to have that higher TPP value. Let me ask you something. If we take your argument to its logical extreme and say that in IPRs the PTAB is always bound by what the BPAI decision was there are thousands and thousands of BPAI decisions that found claims to be non-obvious or non-anticipated. Those claims ultimately issue and now they're subject to IPRs. Wouldn't we essentially be saying that the whole purpose of the IPR statute gets wiped out? Because once the claim, except for those few claims that issue without any appeal. No, I don't think that that would be the conclusion. Here it is a very odd issue that we're looking at. We're not looking, we're not saying that the board's decision renders the current claims obvious at all. We're looking at one finding that the board made. Right, but there's lots and lots and lots of board findings that go the other way. And would we say that the PTAB then can't invalidate an issued patent if the BPAI ever made a finding of non-obviousness? If the BPAI made a decision on non-obviousness, then under administrative law what the PTAB should do is show that there was a change in the law. Or that they were wrong, that they were actually wrong. Instead, the PTAB is the same board that is looking at these patents during prosecution. And now they're looking to answer— Well, you're saying they couldn't even say they were actually wrong. Your argument is they'd have to be bound. No, they have to give deference. Now, an administrative body can change its mind. But in order to change its mind, it has to articulate a reason. And that reason has to be very good. People are supposed to be able to rely on the public record. I see my time's nearly up. Do you have any other questions? I don't think so. Thank you. Thank you. Thank both counsel. The case is submitted.